UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Peoria Division

| | |
|---|---|
| James A. Donald, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. _____ |
| | ) |
| Wexford Health Sources, Inc., Anthony Carter, | ) |
| O.D., and Kurt D. Osmundson, D.O., | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR INJUNCTIVE
AND MONETARY RELIEF AND JURY DEMAND**

NOW COMES the Plaintiff, James A. Donald, B63584, by and through his attorney, Thomas J. Pliura, M.D., J.D., and complaining of Defendants Wexford Health Sources, Inc., Anthony Carter, O.D., and Kurt D. Osmundson, D.O., respectfully states as follows:

**General Allegations**
**Parties**

1. At all times relevant hereto, Plaintiff was and is an inmate of the Illinois Department of Corrections (IDOC) and housed at Illinois River Correctional Center in Canton, Fulton County, IL.

2. At all times relevant hereto, Defendant Wexford Health Sources, Inc., was and is a Florida For-Profit Corporation authorized to do business in Illinois or otherwise doing business in Illinois, and engaged in the practice of providing contracted health care services to inmates of the IDOC, including Illinois River Correctional Center.

3. At all times relevant hereto, Defendant Anthony Carter, O.D. was and is an optometrist, licensed to practice optometry by the State of Illinois, an agent or employees of Co-

Defendant Wexford, and engaged in the practice of providing optometry care services to inmates of the IDOC including the Plaintiff herein.

4. At all times relevant hereto, Defendant Kurt D. Osmundson, DO, was and is a physician, licensed to practice medicine by the State of Illinois, an agent or employees of Co-Defendant Wexford, and engaged in the practice of providing medical care services to inmates of the IDOC including the Plaintiff herein.

## Venue

5. Venue is proper under 28 U.S. Code 1391 (b)(1) as the district of residence, at the time this action was initially filed, of one or more defendants and under Section 1391 (b)(2) as the District in which a substantial part of the events giving rise to the claim occurred.

## Jurisdiction

6. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 1343 because the claim raise Federal Questions as to the deprivation of Plaintiff's rights under 42 U.S.C. § 1983 and under the Eight Amendment to the Constitution.

## Common Factual Allegations

7. In 2011, Defendant Wexford Health Sources, Inc. entered into a 10-year, $1.36 billion contract with the State of Illinois to provide health care services to Illinois prison inmates.

8. As an inmate of the Department of Corrections, Plaintiff's only access to medical care is through the prison healthcare system.

9. At all times relevant hereto, Defendant Wexford utilized a system in which its employed or contracted physicians could not directly make a referral of an inmate for specialty care services including surgery without the permission of Wexford through a review process known as "collegial review". However, if collegial review denied a requested referral, the physician did have an appeal process available.

10. Plaintiff entered Illinois River Correctional Center in 2014.

11. Plaintiff had a past medical history of corneal transplant of the left eye 2011, performed by Katherine Crockett, M.D., a cornea specialty ophthalmology physician. This history was known to correctional center and Wexford staff.

12. On or about August 28, 2014, Plaintiff was diagnosed at with glaucoma, a condition causing elevated pressure in the eyes.

13. On or about October 27, 2014, Plaintiff was evaluated at Illinois Eye Center in Peoria, IL by Steven Sicher, M.D. who recommended Plaintiff be seen by his prior physician, Katherine Crockett, M.D., the cornea specialty ophthalmology physician in Bloomington, Illinois for follow up in 4 months.

14. Shortly after October 27, 2014, Plaintiff was informed by agents of Wexford Health Sources that it would be too expensive for him to see his treating Ophthalmologist, Katherine Crockett, M.D.

15. Illinois River Correctional Center is approximately 45 minutes travel time from Peoria and approximately 75 minutes travel time from Dr. Crockett's Bloomington, IL office

16. On Nov. 19, 2014, Plaintiff complained that he had not received appropriate eye treatment, including complaining he had not received medicated contact lens and proper lens solution for his eyes.

17. In June 2015, Plaintiff was found to have with eye redness and elevated pressure in his left eye, alleged to be around 24, when his baseline status pressure had been ~14-16.

18. On or about September 17, 2015, Plaintiff saw Anthony Carter, OD at IRCC. At that time, Plaintiff complained of eye redness and visual problems.

19. Plaintiff was again seen on September 24, 2015 by Dr. Carter, and again complained of eye redness and irritation.

20. On September 25, 2015, Combigan Ophthalmic Solution was ordered to treat Plaintiff's left eye complaints, to be given twice daily for 180 days. But to the best of Plaintiff's knowledge, recollection, information and belief, he was never given the medication to treat his worsening left eye.

21. After the Combigan Ophthalmic Solution was ordered for Plaintiff, Wexford Health Sources representatives refused to provide it to the patient on a timely basis.

22. On or about October 4, 2015, Plaintiff filed a formal complaint and second request to Optometrist Anthony Carter, OD informing him that he had not received his eye drop medications that had been prescribed for him, specifically complaining he had not received his Vexol medication or his Combigan medication.

23. On or about October 18, 2015 Plaintiff asked to be seen by the health care unit due to worsening eye condition. On that date, he was not seen by a licensed medical physician.

24. On October 19, 2015, with his left eye worsening, red, swollen, and painful, Plaintiff went back to the medical unit at approximately 8:30 AM and he was subsequently seen by Kurt D. Osmundson, DO and thereafter referred to be seen by a cornea specialty ophthalmology physician at Illinois Eye Center in Peoria on an emergent basis.

25. On October 19, 2015, upon arrival at Illinois Eye Center, it was learned that the cornea specialty ophthalmologist physicians were not available in Peoria, so Plaintiff was instead seen by Optometrist Jacqueline Crow, OD, and thereafter was sent back to IRCC.

26. On October 20, 2015, Plaintiff's eye continued to deteriorate with worsening vision, photosensitivity and increased pain and redness. He was seen at the IRCC Health Care

Unit, where he was informed he would need to wait until October 22, 2015 before he could see a corneal specialist at Illinois Eye Center. No efforts were made for Plaintiff to see any other specialist on a more emergent basis.

27. On October 21, 2015, Plaintiff's eye continued to deteriorate with worsening vision, photosensitivity and increasing pain and redness. No efforts were made for Plaintiff to see a specialist on an emergent basis.

28. On Thursday, October 22, 2015, Plaintiff's eye continued to worsen with increasing pain and redness. Plaintiff was transported back to Illinois Eye Center when he was seen by a cornea specialty ophthalmology physician, Evan Pike, M.D. for the first time since the problems had developed in June 2015. He was placed on antibiotics and subsequently sent back to IRCC.

29. After returning to IRCC on Oct. 22, 2015, Plaintiff's left eye continued to worsen with increased swelling, redness, and external protrusion of the left eye out of the orbital socket. No efforts were made for Plaintiff to see a specialist on an emergent basis.

30. On Friday, Oct. 23, 2015, Plaintiff's left eye continued to worsen at IRCC and again, no efforts were made for Plaintiff to see a specialist on an emergent basis.

31. On Saturday, Oct. 24, 2015, Plaintiff's left eye continued to worsen at IRCC and again, no efforts were made for Plaintiff to see a specialist on an emergent basis.

32. On Sunday, Oct. 25, 2015, Plaintiff's left eye continued to worsen at IRCC and again, no efforts were made for Plaintiff to see a specialist on an emergent basis.

33. On Monday, Oct 26, 2015, Plaintiff's left eye was bleeding, and the eye had ruptured due to infection and elevated pressure. The left eye was blind at that time. Plaintiff was

taken back to Illinois Eye Center and seen again by Dr. Sicher who indicated the eye could not be saved and needed to be surgically removed on an emergent basis.

34. On October 26, 2015, Specialty Ophthalmologist Catherine Cuite, MD performed an emergent surgical enucleation (removal) of Plaintiff's left eye. He was found to have acute suppurative panophthalmitis which cultured positive for Pseudomonas aeruginosa.

**Count I**

Plaintiff complains of Defendant Anthony Carter, OD, as follows:

1. - 34, Plaintiff realleges paragraphs 1-34 of the common allegations above as paragraphs 1-34 of this Count I.

35. With respect to the care and treatment of the Plaintiff as alleged herein, it was then and there the duty of Defendant to use that degree of skill and care of a reasonable careful optometrist practicing in a similar setting.

36. Notwithstanding said duty, Defendant was guilty of one or more of the following careless and negligent acts or omissions which directly and proximately caused injury to the Plaintiff:

   a. Failing to properly and timely evaluate, treat and diagnose plaintiff's serious ophthalmological medical condition;

   b. Failing to properly and timely provide Plaintiff with necessary medications, including Vexol and/or Combigan medication;

   c. Failing to properly and timely allow Plaintiff to be evaluated by a specialty ophthalmologist;

   d. Failing to properly and timely treat Plaintiff's eye infection, specifically panophthalmitis caused by Pseudomonas aeruginosa;

- e. Failing to properly and timely treat Plaintiff's elevated eye pressure;
- f. Failing to properly and timely ensure Plaintiff's transportation to a specialty facility so he could be evaluated by a specialty ophthalmologist on a timely basis;
- g. Otherwise deviated from the accepted standards of care by failing to properly and timely diagnose and treat Plaintiff's serious eye condition.

37. As a direct and proximate result of the aforesaid careless and negligent acts or omissions of the defendant as alleged above, Plaintiff was caused to incur the loss of his left eye, partial blindness, pain, suffering, disfigurement and other damages for which Defendant is liable.

38. An attorney's certificate of merit and report of reviewing physician, as required by 735 ILCS 5/2-622 is attached hereto and incorporated herein.

WHEREFORE Plaintiff, James A. Donald, prays for judgment in his favor and against Defendant in an amount in excess of seventy-five thousand dollars ($75,000.00), together with his costs of suit, and such other and further relief as this court may deem proper.

## Count II

Plaintiff complains of Defendant Anthony Carter, OD, as follows:

1. - 34, Plaintiff realleges paragraphs 1-34 of the common allegations above as paragraphs 1-34 of this Count II.

35. Deliberate indifference to a serious medical need violates an inmate's right under the Eighth Amendment of the Constitution of the United States to be free from cruel and unusual punishment.

36. By reason of his repeated examinations of Plaintiff and review of medical records, Defendant knew that Plaintiff had a serious medical need and consciously disregarded that need by failing to take reasonable measures to properly and timely address it.

37. Between October, 2014 and October 2015, Defendant acted with deliberate indifference to a serious medical need of the Plaintiff by, *inter alia*;

    a. Failing or refusing to timely refer Plaintiff to a specialist physician,

    b. Failing or refusing to ensure Plaintiff received necessary specialty care,

    c. Failing or refusing to refer Plaintiff to his prior treating specialty physician, Dr. Crocket, as recommended by Dr. Sicher,

    d. Failing to ensure Plaintiff actually received prescribed medications including Vexol and/or Combigan;

    e. Persisting in a course of treatment known to be ineffective,

    f. Deferring individual clinical judgment to non-treating medical professionals at Defendant Wexford through the collegial review process,

    g. Rendering diagnosis and treatment decisions constituting such a substantial departure from accepted professional judgment, practice, or standards that the treatment is not based on professional judgment,

    h. Failing to appeal or otherwise circumvent the collegial review process when the decisions rendered were contrary to accepted medical standards and/or jeopardized the health and well-being of the Plaintiff,

    i. Otherwise failing to take reasonable measures to address Plaintiff's serious condition.

WHEREFORE, Plaintiff prays for judgment in his favor and for the following relief:

A) Injunctive Relief in the form of an order compelling Defendant to afford him proper, complete, medical care including, referral outside of the prison healthcare system for specialty services when warranted and all other necessary medical care.

B) Monetary Relief in the form of money damages in excess of $75,000.00 adequate to compensate him for his damages,

C) Punitive Damages appropriate to deter Defendant's wrongful conduct;

D) Attorney fees under 42 U.S.C.§ 1988; and

E) Such other and further relief as this Court may deem proper.

## Count III

Plaintiff complains of Defendant Kurt D. Osmundson, D.O., as follows:

1. - 34, Plaintiff realleges paragraphs 1-34 of the common allegations above as paragraphs 1-34 of this Count III.

35. With respect to the care and treatment of the Plaintiff as alleged herein, it was then and there the duty of Defendant to use that degree of skill and care of a reasonable careful physician practicing in a similar setting.

36. Notwithstanding said duty, Defendant was guilty of one or more of the following careless and negligent acts or omissions which directly and proximately caused injury to the Plaintiff:

   a. Failing to properly and timely evaluate, treat and diagnose plaintiff's serious ophthalmological medical condition;

   b. Failing to properly and timely provide Plaintiff with necessary medications, including Vexol and/or Combigan medication;

  c. Failing to properly and timely allow Plaintiff to be evaluated by a specialty ophthalmologist;

  d. Failing to properly and timely treat Plaintiff's eye infection, specifically panophthalmitis caused by Pseudomonas aeruginosa;

  e. Failing to properly and timely treat Plaintiff's elevated eye pressure;

  f. Failing to properly and timely ensure Plaintiff's transportation to a specialty facility so he could be evaluated by a specialty ophthalmologist on a timely basis;

  g. Otherwise deviated from the accepted standards of care by failing to properly and timely diagnose and treat Plaintiff's serious eye condition.

37. As a direct and proximate result of the aforesaid careless and negligent acts or omissions of the defendant as alleged above, Plaintiff was caused to incur the loss of his left eye, partial blindness, pain, suffering, disfigurement and other damages for which Defendant is liable.

38. An attorney's certificate of merit and report of reviewing physician, as required by 735 ILCS 5/2-622 is attached hereto and incorporated herein.

WHEREFORE Plaintiff, James A. Donald, prays for judgment in his favor and against Defendant in an amount in excess of seventy-five thousand dollars ($75,000.00), together with his costs of suit, and such other and further relief as this court may deem proper.

### Count IV

Plaintiff complains of Defendant Kurt D. Osmundson, D.O., as follows:

1. - 34, Plaintiff realleges paragraphs 1-34 of the common allegations above as paragraphs 1-34 of this Count IV.

35. Deliberate indifference to a serious medical need violates an inmate's right under the Eighth Amendment of the Constitution of the United States to be free from cruel and unusual punishment.

36. By reason of his examination of Plaintiff and review of medical records, Defendant knew that Plaintiff had a serious medical need and consciously disregarded that need by failing to take reasonable measures to properly and timely address it.

37. Defendant acted with deliberate indifference to a serious medical need of the Plaintiff by, *inter alia*;

    a. Failing or refusing to ensure Plaintiff received necessary specialty care,

    b. Failing or refusing to refer Plaintiff to his prior treating specialty physician, Dr. Crocket, as recommended by Dr. Sicher,

    c. Failing to ensure Plaintiff actually received prescribed medications including Vexol and/or Combigan,

    d. Persisting in a course of treatment known to be ineffective,

    e. Deferring individual clinical judgment to non-treating medical professionals at Defendant Wexford through the collegial review process,

    f. Rendering diagnosis and treatment decisions constituting such a substantial departure from accepted professional judgment, practice, or standards that the treatment is not based on professional judgment,

    g. Failing to appeal or otherwise circumvent the collegial review process when the decisions rendered were contrary to accepted medical standards and/or jeopardized the health and well-being of the Plaintiff,

    h. Otherwise failing to take reasonable measures to address Plaintiff's serious condition.

WHEREFORE, Plaintiff prays for judgment in his favor and for the following relief:

- A) Injunctive Relief in the form of an order compelling Defendant to afford him proper, complete, medical care including, referral outside of the prison healthcare system for specialty services when warranted and all other necessary medical care.
- B) Monetary Relief in the form of money damages in excess of $75,000.00 adequate to compensate him for his damages,
- C) Punitive Damages appropriate to deter Defendant's wrongful conduct;
- D) Attorney fees under 42 U.S.C.§ 1988; and
- E) Such other and further relief as this Court may deem proper.

## Count V

Plaintiff complains of Defendant Wexford Health Sources, Inc., as follows:

1. - 36, Plaintiff realleges paragraphs 1-36 of Count I above as paragraphs 1-36 of this Count V.
37. - 38, Plaintiff realleges paragraphs 35 and 36 of Count III above as paragraphs 37 and 38 of this Count V.
39. At all times relevant hereto, Defendants Carter and Osmundson were employees or agents of Defendant Wexford and acting in furtherance of Wexford's contract with the State of Illinois to provide healthcare services.
40. Under the doctrine of *Respondeat Superior*, Defendant Wexford is liable for the negligence of its employees and agent, including but not limited to Carter and Osmundson, as alleged herein.
41. As a direct and proximate result of the aforesaid careless and negligent acts or omissions of the defendant, by and through its agents and employees as alleged above, Plaintiff was

caused to incur the loss of his left eye, partial blindness, pain, suffering, disfigurement and other damages for which Defendant is liable.

42. An attorney's certificate of merit and report of reviewing physician, as required by 735 ILCS 5/2-622 is attached hereto and incorporated herein.

WHEREFORE Plaintiff, James A. Donald, prays for judgment in his favor and against Defendant in an amount in excess of seventy-five thousand dollars ($75,000.00), together with his costs of suit, and such other and further relief as this court may deem proper.

**Count VI**

1. - 34, Plaintiff realleges paragraphs 1-34 of the common allegations above as paragraphs 1-34 of this Count VI.

35. Deliberate indifference to a serious medical need violates an inmate's right under the Eighth Amendment of the Constitution of the United States to be free from cruel and unusual punishment.

36. At all times relevant hereto, it was the policy of Defendant Wexford, either through an official policy or decision by a policy-making authority or through a long-standing and widespread custom or practice to deny or delay referral for specialty medical and surgical consults and services, and to deny and/or delay non-formulary medications.

37. Notwithstanding Plaintiff's 8th Amendment rights and with deliberate indifference thereto, Defendant, by policy and though its collegial review process, denied needed ophthalmology specialty services and denied or delayed needed medications in favor of ineffectual treatment.

38. Policy-making officials at Wexford knew, or in the exercise of reasonable supervisory activities, should have known that that Plaintiff required specialty services, was in pain

and in jeopardy of losing his eye, and that conservative treatment alternatives had failed and were ineffective.

39. As a direct and proximate result of the deliberate indifference of the Defendant, Plaintiff was caused to incur the loss of his left eye, partial blindness, pain, suffering, disfigurement and other damages for which Defendant is liable.

WHEREFORE, Plaintiff prays for judgment in his favor and for the following relief:

A) Injunctive Relief in the form of an order compelling Defendant to afford him proper, complete, medical care including, referral outside of the prison healthcare system for specialty services when warranted and all other necessary medical care.

B) Monetary Relief in the form of money damages in excess of $75,000.00 adequate to compensate him for his damages,

C) Punitive Damages appropriate to deter Defendant's wrongful conduct;

D) Attorney fees under 42 U.S.C.§ 1988; and

E) Such other and further relief as this Court may deem proper.

By: s/THOMAS J. PLIURA_____
James A. Donald, Plaintiff by
Thomas J. Pliura, M.D., J.D., his attorney

### Jury Demand

Plaintiff demands a trial by jury on all counts herein.

By: s/THOMAS J. PLIURA_____
James A. Donald, Plaintiff by
Thomas J. Pliura, M.D., J.D., his attorney

Thomas J. Pliura, M.D., J.D., P.C.
P.O. Box 130
LeRoy, IL 61752
Telephone: (309)962-2299
Fax: (309)962-4646
tom.pliura@zchart.com