IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JAMES A. DONALD,<br>　　　Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., ANTHONY CARTER, and KURT D. OSMUNDSON,<br>　　　Defendant. | Case No. 1:16-cv-01481-JES-JEH |

**Order**

Before the Court is the Plaintiff's Motion to Compel Production of Documents (D. 27)[1] and the Defendants' response thereto (D. 29). For the reasons stated, *infra*, the motion is GRANTED.

**I**

The Plaintiff's complaint alleges that while he was an inmate in the Illinois Department of Corrections, the medical negligence and deliberate indifference of Defendant-physicians Carter and Osmundson proximately caused him to incur the loss of his left eye, partial blindness, pain, suffering, and disfigurement. Defendant Wexford, as the employer of the Defendant-physicians, is alleged to be responsible for their acts under a *respondeat superior* theory. Donald also makes a claim for punitive damages related to his federal, deliberate indifference counts.

The Plaintiff's request for production of documents numbers 1 and 2 seeks from Wexford: 1) "Any and all audited or unaudited financial statements of Defendant created or relating to Defendants' finances in the last three years" and

---

[1] References to the docket in this court are abbreviated as "(D. __ at ECF p. ___)."

1

2) "Any and all federal tax returns of Defendant from the last three years." (D. 27 at ECF p. 1). Wexford objected to the requests arguing the information sought was, among other things, irrelevant.

In Donald's motion to compel the production of the information sought in requests numbers 1 and 2, he argues that information about Wexford's financial condition is relevant to the issue of punitive damages. Wexford, however, argues that it is inappropriate to consider a corporate defendant's wealth or net worth in assessing punitive damages, and, accordingly, the information Donald seeks is irrelevant.

## II
### A

The initial question presented is whether the financial condition of Wexford is relevant, for Federal Rule of Civil Procedure 26(b) limits discovery to that which is "relevant to any party's claim or defense . . ." If a corporate defendant's wealth may not be considered when assessing punitive damages, it is not "relevant," but, if it may be properly considered then, of course, it is.

The answer to this seemingly simple question is not as simple as it should be because of the Seventh Circuit Court of Appeals' opinion in *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499 (7th Cir. 1992), and the subsequent district court cases attempting to interpret it. In *Zazu*, a case relied upon by Wexford, the court considered the defendant's appeal in a trademark infringement action. The court reversed and remanded, finding that the plaintiff did not have superior rights in trademark to the defendant and, even if it had, the damages award was excessive. *Id.* Regarding the punitive damages award, the court noted that although courts "take account of a defendant's wealth when '[a]n amount sufficient to punish or deter one individual may be trivial to another,'" such may not be the case when the defendant is a corporation. *Id.* at 508. The court explained:

> For natural persons the marginal utility of money decreases as wealth increases, so that higher fines may be needed to deter those possessing great wealth. ("May be" is an important qualifier; the entire penalty includes extra-judicial consequences, such as loss of business and other future income, that is likely to be greater for wealthier defendants.) Corporations, however, are not wealthy in the sense that persons are. Corporations are abstractions; investors own the net worth of the business. These investors pay any punitive awards (the value of their shares decreases), and they may be of average wealth. Pension trusts and mutual funds, aggregating the investments of millions of average persons, own the bulk of many large corporations. Seeing the corporation as wealthy is an illusion, which like other mirages frequently leads people astray.

*Id.* at 508. This language implies that for a corporate defendant, its financial condition is irrelevant for purposes of calculating punitive damages.

Some district courts have interpreted *Zazu* in exactly this way. For example, in *Yund v. Covington Foods, Inc.*, 193 F.R.D. 582 (S.D. Ind; 2000), the court found that *Zazu* was "controlling precedent" for the proposition that, at least for corporate and institutional entities, "evidence of a defendant's wealth should be irrelevant to the assessment of punitive damages." *Id.* at 586. *See also Pivot Point Int'l, Inc. v. Charlene Products, Inc.*, 932 F.Supp. 220, 223 (N.D. Ill. 1996) (excluding evidence of defendant's financial situation as irrelevant to punitive damages claim under federal law). The court noted that in part I of the *Zazu* opinion, the court ruled that the evidence was insufficient to establish the defendant's liability, "thus rendering all damages improper." *Yund*, 193 F.R.D at 586. The court in *Yund* then noted that, in part II of the *Zazu* opinion, the court, in what it characterized as a "second, and independently sufficient, error [that] requires us to set aside the judgement," made its pronouncement concerning the relevance of a defendant's wealth for purposes of assessing punitive damages. *Id.*

The court in *Yund* found the punitive damages discussion to be precedential because, although the reversal on liability rendered all damages improper, the *Zazu* court was simultaneously evaluating whether a sanction for litigation misconduct could include a component of punitive damages. *Id*. That question was independent of the question addressed in part I concerning liability. Specifically,

> [A]lthough the [c]ourt reversed the finding of liability and the award of punitive damages for the infringement claims, its subsequent holding that a corporation's financial conditions is not relevant to the assessment of punitive damages cannot be considered as *dictum* because the [c]ourt also held that a sanction award was appropriate which could include a punitive or deterrent element under the same punitive damages standard that applies to ordinary damages."

*Id.* at 587.

The majority of district courts, however, have found that *Zazu*'s musings on punitive damages are indeed *dictum*. For example, in *Jones v. Scientific Colors, Inc.*, 2001 WL 902278 (N.D. Ill.), the district court sustained a magistrate judge's order compelling the corporate defendant to produce financial information related to a claim for punitive damages. While acknowledging the decisions in *Yund* and *Pivot Point*, the court in *Jones* found that *Zazu* was not controlling precedent but, instead, *dictum*. The court did not, however, provide any analysis regarding how it reached this conclusion. The subsequent district court decisions relying upon *Jones* for the proposition that *Zazu* is not controlling precedent add nothing to the lack of analysis in *Jones* relegating *Zazu*'s punitive damages analysis to *dictum*. *See e.g., Isbell v. John Crane, Inc.*, 74 F. Supp. 893, 898-99 (N.D. Ill; 2014) (agreeing with *Jones* that *Zazu*'s punitive damages analysis was *dictum*); *E.E.O.C. v. Staffing Network, L.L.C.*, 2002 WL 31473840 (N.D. Ill.) (same). Further complicating the issue is the fact that other district courts decline to follow *Zazu* not because its punitive damages analysis is *dictum*, but rather because the punitive damages claims in the

cases involved individual persons, not corporations; state law claims, not federal; or specific statutes, not federal common law. *See e.g., Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000) (discussing the Federal Debt Collection Practices Act's "net worth" provision as it relates to punitive damages); *Kemzy v. Peters*, 79 F.3d 33, 36 (7th Cir. 1996) (discussing the appropriateness of evidence of an *individual* defendant's wealth for purposes of calculating punitive damages); *In re Aqua Dots Products Liability Litigation*, 270 F.R.D. 322, 325 (N.D. Ill; 2010) (considering whether a defendant's wealth is a proper consideration for purposes of calculating punitive damages related to a claim made under *state* law).

### B

This Court concludes that, in a case where punitive damages are sought against a corporate defendant, *Zazu*'s statement that the defendant's financial condition is irrelevant to punitive damages is *dictum*. The term "*dictum*" has been variously defined, as noted by the Seventh Circuit in *United States v. Crawley*:

> We have defined dictum as "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding-that, being peripheral, may not have received the full and careful consideration of the court that uttered it." *Sarnoff v. American Home Products Corp.,* 798 F.2d 1075 (7th Cir.1986). "[D]ictum is a general argument or observation unnecessary to the decision.... The basic formula [for distinguishing holding from dictum] is to take account of facts treated by the judge as material and determine whether the contested opinion is based upon them." *Local 8599, United Steelworkers of America v. Board of Education,* 162 Cal.App.3d 823, 834, 209 Cal.Rptr. 16, 21 (1984). A dictum is "any statement made by a court for use in argument, illustration, analogy or suggestion. It is a remark, an aside, concerning some rule of law or legal proposition that is not necessarily essential to the decision and lacks the authority of adjudication." *Stover v. Stover,* 60 Md.App. 470, 476, 483 A.2d 783, 786 (1984). It is "a statement not addressed to the question before the court or necessary for its decision." *American Family Mutual Ins. Co. v. Shannon,* 120 Wis.2d 560, 565, 356 N.W.2d 175, 178 (1984). As often in dealing with complex

terms, the definitions (those above, and others we could give) are somewhat inconsistent, somewhat vague, and somewhat circular.

837 F.2d 291, 292 (7th Cir. 1988). Alternative to these definitions, the court noted that *dictum* can be considered to be a passage that "was unnecessary to the outcome of the earlier case and therefore perhaps not as fully considered as it would have been if it were essential to the outcome." *Id.*

Under any of these formulations, part II of the *Zazu* opinion is *dictum*. As even the *Yund* court acknowledged, in part I of the *Zazu* opinion, the court ruled that the evidence was insufficient to establish the defendant's liability, "thus rendering all damages improper." *Yund*, 193 F.R.D at 586. Because the court reversed the lower court's finding on liability, the damages award premised upon that erroneous liability determination automatically fell with it. The punitive damages award was *ipso facto* vacated once the court concluded that the defendant was erroneously found to be liable. The court's discussion of how to properly calculate punitive damages was therefore gratuitous and *dictum*.

At best, only the portion from part II of *Zazu* which addressed the district court's sanctions for litigation misconduct is binding precedent. As the court in *Yund* noted, part II of the *Zazu* opinion dealt not only with the punitive damages award, but also with the district court's award of sanctions against the defendant for litigation misconduct. *Yund*, 193 F.R.D at 587. The Court agrees that the portion of part II addressing sanctions is binding precedent. That portion of the court's opinion is independent of part I of the opinion addressing liability; the district court's award of sanctions was not automatically vacated by the reversal of the finding of liability like the punitive damages award was.

However, this Court disagrees with *Yund*'s conclusion that the punitive damages portion of part II is not *dictum* because the *Zazu* court "held that a sanction award was appropriate which could include a punitive or deterrent

6

element under the same punitive damages standard that applies to ordinary damages." *Id.* The court in *Yund*, in other words, concluded that because the same standards apply to a punitive damages award as they do to a sanction with a punitive element, the precedential sanctions portion of part II of *Zazu* is also precedential as it applies to punitive damages.

*Yund* cites nothing in support of its equating of the standards for punitive damages and sanctions, which is the lynchpin of its finding that the punitive damages discussion in *Zazu* is precedential. Moreover, this Court concludes the standards are not equivalent. The *Zazu* opinion itself cites "contempt of court, Fed. R. Civ. P. 11, and 28 U.S.C. § 1927" as the "principle vehicles for penalizing misconduct in litigation" and directs judges to "ask and answer the questions these bodies of law pose" before imposing sanctions. *Zazu*, 949 F.2d at 507-08. These bodies of law have their own sets of precedents quite separate and distinct from the federal common law which allows for punitive damages in a deliberate indifference case. *See Smith v. Wade*, 461 U.S. 1625, 1628-29 (discussing the federal common law of punitive damages in § 1983 cases). Finally, when imposing sanctions for litigation misconduct, courts may only impose "punitive" sanctions in special circumstances after according the offending party certain procedural protections. *See Goodyear Tire & Rubber Co., v. Haeger*, __ U.S. __, 137 S.Ct. 1178, 1186 (2017) (noting that some civil sanctions "must be compensatory rather than punitive"); *Mineworkers v. Bagwell*, 512 U.S. 821, 826-30 (1994) (distinguishing compensatory from punitive sanctions and specifying the procedures needed to impose each kind). In other words, sanctions and punitive damages are quite different, as are the standards related to them, and, accordingly, this Court disagrees with *Yund*'s equation of the two. Having concluded that the standards for imposition of sanctions and punitive damages are different, there is no bootstrap left by which to connect *Zazu's dictum* on punitive damages with its

precedential discussion of sanctions. *Zazu*'s discussion of punitive damages was unnecessary given its reversal on the question of liability and was, therefore, *dictum* which this court is not bound to follow.

C

Although the Court concludes that it is not bound to follow *Zazu*'s *dictum* on punitive damages, it must still determine whether, absent that *dictum*, the financial condition of a corporate defendant may ordinarily be considered when assessing punitive damages. The answer to this question is much simpler than the previous one. The general rule, as stated by the Supreme Court in *Newport v. Fact Concerts*, 453 U.S. 247, 270 (1981), is that "'[e]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded . . ." *See also* Restatement (Second) of Torts § 908(2) (1979); D. Dobbs, Law of Remedies § 3.9, pp. 218–219 (1973). Other than the *dictum* in *Zazu*, there is no opinion from the Seventh Circuit modifying or qualifying this general rule under the circumstances of this case. Accordingly, as a general rule, a defendant's wealth can be considered when evaluating punitive damages. It is therefore "relevant" within the meaning of Rule 26(b).

III

Although the Court concludes that the information sought in requests for production numbers 1 and 2 seek relevant information, it must finally address whether that information is nevertheless precluded from production under Rule 26; relevance is a necessary but not sufficient condition to bring information within the scope of discoverable information. Specifically, once relevance of information is established, the information is only discoverable if it is also:

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26

Wexford argues that, assuming the Plaintiff were to prevail in this case, "any award of compensatory damages would be substantial and according to the U.S. Supreme Court in *BMW of North America v. Gore*, 517 U.S. 559 (1996), must bear a reasonable relationship to the award of compensatory damages, generally not exceeding a one to one ratio." (D. 29 at ECF p. 5). Moreover, Wexford suspects that the plaintiff "intends to put on evidence that Defendant is an evil corporation to induce a jury into a monstrous punitive damages award," which would result in a "denial of due process and a remitted award under *BMW*." *Id.*

This argument, however, goes to the ultimate admissibility of the information Donald seeks, not its discoverability. If indeed Donald intends to use at trial the information sought in the way Wexford expects, such an intended use may well make the information inadmissible. However, that is a question for the district judge more properly argued after the close of discovery in a motion *in limine*. So long as information is relevant and within the scope of discovery defined by Rule 26, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b).

Finally, Wexford does not advance, nor does this Court find, any other factors set forth in Rule 26(b) which should preclude the production of the information sought by Donald. Any privacy concerns Wexford may have regarding disclosure of the information sought can be properly addressed through a protective order, which courts routinely grant when information is produced during discovery.

## VI

For the reasons stated, *supra*, the motion to compel (D. 27) is GRANTED. The parties are directed to confer on the language for a proposed protective order, and the Defendant shall file a motion for entry of a protective order after that conferral on or before August 3, 2017.

*It is so ordered.*

Entered on 7/20/2017

s/Jonathan E. Hawley
U.S. Magistrate Judge